UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYLVESTER LANGLEY,

                Plaintiff,

v.

CHASE HOME FINANCE, LLC, *et al.*,

                Defendants.

_____/

Case No. 1:10-cv-604

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

Plaintiff filed this *pro se* action seeking damages and equitable relief arising from a mortgage foreclosure of certain property located in Benton Harbor, Michigan. This matter is now before the court on two motions: "Defendant Chase Home Finance, LLC's Motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and, alternatively, for summary judgment under Fed. R. Civ. P. 56(c)" (docket no. 22), and, "Defendant Trott & Trott and Marcy J. Ford's Motion to dismiss pursuant to FRCP 12(b)(6) and Motion for summary judgment pursuant to FRCP 56" (docket no. 23). Defendants subsequently filed "concurrences" with each other's dispositive motions (docket nos. 28 and 29).

## I.      Background

### A.      Plaintiff's complaint

On June 8, 2010, plaintiff filed a complaint in state court opposing the non-judicial foreclosure of his property located in Berrien County. *See* Compl. (docket nos. 1-1 and 1-2). The matter was removed to federal court on June 25, 2010. *See* Notice of Removal (docket no. 1).

Plaintiff named 13 defendants: Chase Home Finance, LLC (sometimes referred to as "Chase"); John Does 1-10; Trott & Trott, P.C. (sometimes referred to as "Trott & Trott"); and Marcy J. Ford (sometimes referred to as "Ford"). Plaintiff's complaint includes the following allegations.

On November 7, 2007, plaintiff entered into a mortgage agreement with Best Home Finance, LLC, with Mortgage Electronic Systems (MERS) as nominee. Compl. at ¶ 5. The mortgage was recorded with the Berrien County Register of Deeds on November 14, 2007, in Liber 2818, at page 2217 (hereafter the "Mortgage"). *Id.* That same day, plaintiff executed a notice of assignment, sale and transfer of servicing rights from Best Home Finance, LLC to 1st Source Bank to take effect on January 1, 2008. *Id.* at ¶ 6. Before plaintiff made his first payment to 1st Source Bank, he received a letter directing him to make payments to Chase. *Id.* Plaintiff alleged that there was "[n]o assignment of mortgage registered at the Berrien County Register of Deeds in 1st Source Bank's name or Chase Home Finance, LLC's name." *Id.* Because plaintiff found no "registered" assignment of mortgage, he sent a letter to Chase on August 5, 2009 "requesting that they send me the signed and officially stamped copy of my promissory note." *Id.* at ¶ 7. On August 11, 2009, plaintiff received a response from Chase with "a copy to pay mortgage documents that I signed at closing." *Id.* at ¶ 8. However, plaintiff alleged that the copy "was not my signed and officially stamped unaltered promissory note." *Id.*

Plaintiff sent another letter to Chase on September 17, 2009, requesting "the signed and officially stamped copy of my promissory note along with my pooling and servicing agreement," but received no response. *Id.* at ¶ 9. Plaintiff searched the "database" of the "Michigan Department of Energy, Labor and Economic Growth's (DEEG) corporation division's business

entity search website" and found that Chase was "not even licensed or registered to do business in Michigan." *Id.*

On December 23, 2009, plaintiff mailed a "Qualified Written Request" in compliance with Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e), and a "request" under the Truth and Lending Act (TILA), 15 U.S.C. § 1601, to Chase. *Id.* at ¶ 10. Chase provided an "incomplete" response to these requests in violation of RESPA and TILA. *Id.* at ¶ 11.

On March 24, 2010, Ford, an attorney with Trott & Trott allegedly "forged & signed an assignment of mortgage . . . as the Vice President of MERS," which was recorded in the Berrien County Register of Deeds in Liber 2915, at page 169. *Id.* at ¶ 12. On the face of this document, Ford, "as Vice President for Mortgage Electronic Registration Systems, Inc., pursuant to the Agreement for Signing Authority dated 09/27/2007," assigned to Chase all interest held by MERS in the Sylvester Mortgage. *See* Assignment of Mortgage (Exh. 8) (docket no. 1-2 at p. 37). Plaintiff alleged that this assignment was in violation of a state criminal statute, M.C.L. § 750.248 (forgery or alteration of a public record). Compl. at ¶ 12.

On May 24, 2010, plaintiff received a "Notice of Foreclosure Sale" letter from Trott & Trott. *Id.* at ¶ 13. Plaintiff characterized this notice as a "debt collection letter," to which he sent a "certified response" on May 26, 2010. *Id.* In his May 26th response, plaintiff disputed the debt and "asked them to cease and desist with all collections of foreclosure activities until all questions are answered and all proofs are made." *Id.* at ¶ 14. Plaintiff alleged that Chase and "their representative Trott & Trott" ignored his request and "violated" the FDCPA. *Id.* On May 28, 2010, Trott & Trott posted a "Notice of Foreclosure Sale" on the front door of plaintiff's house. *Id.* at ¶ 15.

Plaintiff apparently seeks class action status "due to the fact that it has come to my attention that there are people close to me in family and church relationships that have experienced Marcy J. Ford and other Trott & Trott lawyers drafting and signing assignments to their homes as an officer of MERS while Trott & Trott was employed by those banks or by some third party undisclosed mortgage services company. . ." Compl. at p. 5.

Plaintiff seeks a variety of legal and equitable relief including: quieting the title to the real estate in his name; remove the assignment from MERS to Chase; $1,000 and treble damages "for not answering my debt validation letter;" $2,000 and treble damages "for proceeding without validating the debt [in] violation of FDCPA;" $2,000 and treble damages "for not reporting that the debt was disputed on credit reports;" "[a]ctual damages for theft of property $50,000 value of home;" $250,000 for "[d]eceptive practices pretending to enter contract for homeowners to keep home and stay foreclosure while continuing foreclosure secretly;" $200,000 for "[p]ain and suffering and family stress from burden of this defense;" and, damages for "mail fraud, fraud on the court, wire fraud, RICO violations, unjust enrichment, etc." *Id.* at pp. 5-6. Plaintiff also seeks punitive measures against some defendants, including: "[d]isbarment of Marcy J. Ford for impersonating an officer while committing a felony;" "[r]evoking law license of Trott and Trott for action of employees;" and "[g]rant class action status based upon pattern of corrupt activities by Trott & Trott." *Id.* at p. 6.

B.     **Subsequent proceedings**

After the Rule 16 Scheduling Conference, the court entered an order, upon agreement of all parties, dismissing the complaint without prejudice as to defendants "John Does 1-10." *See* Order (docket no. 15). Plaintiff has taken no action to certify a class action.

## C. The court's construction of claims raised in the *pro se* complaint

As an initial matter, the court is faced with construing a complaint filed by a *pro se* plaintiff. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). Based on a review of the complaint, plaintiff has raised five claims. First, plaintiff alleged that on December 23, 2009, he mailed Chase a "qualified written request" for information under RESPA pursuant to 12 U.S.C. § 2605(e). Compl. at ¶ 10. Plaintiff alleged that the Chase violated RESPA by providing an incomplete response to his request. *Id.* at ¶ 11. Second, plaintiff alleged that on December 23, 2009, he also mailed a "request" to Chase pursuant to TILA, 12 U.S.C. § 1601. *Id.* at ¶ 10. The statutory section of TILA cited by plaintiff does not create any substantive rights; rather it sets forth the "Congressional findings and declaration of purpose" for the statute. Nevertheless, plaintiff alleged that Chase violated TILA for providing an incomplete response to his request. *Id.* at ¶ 11. Third, plaintiff alleged that Ford and Trott & Trott forged an assignment of mortgage in violation of a M.C.L. § 750.248. *Id.* at ¶ 12. Fourth, plaintiff alleged that Chase and its "representative" Trott & Trott ignored his May 26, 2010 response to a debt collection letter in apparent violation of the FDCPA. *Id.* at ¶ 14. Fifth, plaintiff questioned whether defendants followed the state mortgage foreclosure procedure. *Id.* at ¶¶ 12, 13 and 15.

In his request for damages, plaintiff presents a lengthy list of legal claims and legal theories which are not alleged in the body of the complaint: to quiet title to the property; for the "theft" of his home; for engaging in "deceptive practices;" for causing "family stress;" for engaging

in "corrupt activities;" and for engaging in "mail fraud, fraud on the court, wire fraud, RICO violations, unjust enrichment, etc." *Id.* at pp. 5-6. While the court liberally construes plaintiff's *pro se* complaint, liberal construction has its limits.

> [C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

*Rogers v. Detroit Police Department*, 595 F.Supp.2d 757, 766 (E.D. Mich.2009).

The court has identified five claims in plaintiff's complaint. While plaintiff's request for damages includes a laundry list of legal claims, these conclusory statements are not supported by the facts alleged in the complaint. The court cannot act as plaintiff's advocate to re-write his complaint to include these additional claims.[1] Accordingly, the court will limit its review to the five identified claims.

### D.    Plaintiff's response

Plaintiff did not file a response to the motion filed by Ford and Trott & Trott. While plaintiff filed a response directed at Chase's dispositive motion, he did not address any of the federal claims. *See* "Plaintiff's Brief in opposition to defendant's motion on the pleadings and, alternatively, for summary judgment" (docket no. 33). Rather, plaintiff asserts in his response that

---

[1] In this regard, plaintiff's use of the term "etc." in describing causes of actions indicates that he is asserting an infinite number of claims and inviting the court to assert unpled claims on his behalf.

the foreclosure is procedurally defective under the Michigan's non-judicial foreclosure statute, which he cites as M.C.L. 600.3204 *et seq.*, because "absent a chain of title showing that Defendants hold both the note and the mortgage to the property to which Defendant has asserted a right, a foreclosure against the Plaintiff by [t]he named Defendants is improper." Plaintiff's Brief at p. 4. Plaintiff's failure to oppose the dismissal of his federal claims, coupled with his exclusive reliance on a state mortgage foreclosure statute, suggests to this court that plaintiff is abandoning his federal claims.

## II.     Chase's dispositive motions

### A.     Motion for judgment on the pleadings

Chase moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "The obvious purpose of Rule 12(c) of the Rules of Civil Procedure is to save time and expenses in  cases wherein the ultimate facts are not in dispute." *Ulen Contracting Corporation v. Tri-County Electric Cooperative*, 1 F.R.D. 284, 285 (W.D. Mich. 1940). When the court determines a motion for judgment on the pleadings, all well-pleaded material allegations of the non-movant's pleadings must be taken as true. *See United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

In evaluating the "well-pleaded material allegations" in the complaint, the court applies the same standard as in a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> Courts "must construe the complaint in the light most favorable to plaintiff," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007) (citation omitted), "accept all well-pled factual allegations as true[,]" *id.*, and determine whether the "complaint states a plausible claim for relief[,]" *Ashcroft v. Iqbal*, ---

U.S. ----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). However, the plaintiff must provide the grounds for its entitlement to relief, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001), and that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct. . . ." *Id.* at 1949, 1950.

*Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

### 1.    TILA claim

Plaintiff has not alleged any particular statutory violation of TILA. This claim is based upon a letter written to Chase dated December 21, 2009 and signed December 22, 2009. *See* Letter (docket no. 1-2 at pp. 17-36). Plaintiff submitted this letter pursuant to RESPA, 12 U.S.C. § 2605(e), a statute which creates a duty for loan servicers to respond to borrower inquiries. *See* discussion in § II.B.2., *infra*. While the letter refers to "TILA," there is no reference to any particular TILA violation. Plaintiff's TILA claim consists of nothing more than a label and conclusion that Chase somehow violated TILA. Plaintiff has failed to plead factual content sufficient to allow the court to draw the reasonable inference that Chase violated TILA. *See Iqbal*, 129 S.Ct. at 1949. Accordingly, Chase is entitled to judgment on the pleadings with respect to the TILA claim.

### 2.    FDCPA claim

Plaintiff's FDCPA claim arises from his May 26, 2010 letter to Chase and Trott & Trott. *See* Letter (docket no. 1-2 at p. 40). This letter, which does not reference the FDCPA, demands that Chase and Trott & Trott "cease and desist" the foreclosure proceeding, i.e., "I am disputing this debt and you must cease and desist with all collections or foreclosure activities until

such time as all questions are answered and all proofs are made." *Id.* Plaintiff's complaint fails to allege any particular statutory violation of the FDCPA against Chase.

In addition, plaintiff's allegations are insufficient to establish a *prima facie* violation of the FDCPA, which requires that he prove four elements:

> 1.      [T]he plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11)[;]
>
> 2.      [T]he "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5)[;]
>
> 3.      [T]he defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and
>
> 4.      [T]he defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A § 1692a-1692o; 15 U.S.C.A § 1692a; 15 U.S.C.A § 1692k.

*Whittiker v. Deutsche Bank National Trust Company*, 605 F.Supp.2d 914, 938-39 (N.D. Ohio 2009).

While the court liberally construes plaintiff's *pro se* complaint, he cannot state a cause of action under the FDCPA by simply inserting the phrase "Fair Debt Practices Collection Act" in his complaint. Plaintiff has made no allegation that Chase, the creditor, is acting as a debt collector. A plaintiff cannot plead mere conclusions, but must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Accordingly, Chase is entitled to judgment on the pleadings with respect to the FDPCA claim.

### 3.      Violation of Michigan criminal statute

Plaintiff alleged that defendants violated a Michigan criminal statute, M.C.L. § 750.248, when Ford executed an assignment of his mortgage from MERS to Chase. The criminal statute at issue prohibits forgery and alteration of public records. *See* M.C.L. § 750.248. Plaintiff

cannot attempt to prosecute an alleged criminal action as part of private civil action. While an act may constitute both a crime and a tort, "the crime is an offense against the public pursued by the sovereign, while the tort is a private injury which is pursued by the injured party." *People v. Veenstra*, 337 Mich. 427, 310-11, 60 N.W.2d 309 (1953). It is well established in Michigan that "[a] prosecution for a crime should be brought in the name of the people of the State of Michigan." *Id.* at 311. This is consistent with the general rule "that a private right of action is not maintainable under a criminal statute." *American Postal Workers Union, AFL-CIO, Detroit Local v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities . . . and a private party has no right to enforce these sanctions." *Id.* (internal quotations omitted). *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("[w]e have been quite reluctant to infer a private right of action from a criminal prohibition alone"); *People v. Williams*, 244 Mich. App. 249, 254, 625 N.W.2d 132 (2001) ("Certainly, in the context of civil proceedings for intentional torts, a private party may initiate and pursue a claim through our court system. However, a civil action is completely separate and independent from a criminal action. Put simply, in criminal cases, the prosecutor alone possesses the authority to determine whether to prosecute the accused.").

While this criminal statute allows a court to declare that the forged or altered document is invalid in the event of a criminal conviction, *see* M.C.L. § 750.248(4), the statute does not explicitly authorize a private cause of action. *See, e.g.*, *Ticor Title Insurance Company v. National Abstract Agency, Inc.*, No. 05-cv-73709-DT, 2007 WL 2710113 at *10 (E.D. Mich. Sept. 13, 2007) (the prohibition against embezzlement set forth in M.C.L. § 750.174 did not create a

private right of action for the plaintiff, noting that it was a "bare criminal statute[] containing no indication that a private right of action is available"). *See generally, Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (violations of criminal mail and wire fraud statutes do not give rise to private causes of action); *Purk v. United States*, 747 F. Supp. 1243, 1248 (S.D. Ohio 1989) (finding that the federal criminal statutes relied upon by the plaintiff in a civil action "address criminal offenses which can be prosecuted only by the proper United States authorities and which do not permit private causes of action"). Accordingly, defendants are entitled to judgment on the pleadings with respect to plaintiff's claim that they violated M.C.L. § 750.248.[2]

### B. Motion for summary judgment

### 1. Legal standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[2] Defendants Ford and Trott & Trott, having concurred in the arguments presented and relief sought in Chase's motion, are entitled to dismissal as to the claim brought under M.C.L. § 750.248. However, the court will also address Ford and Trott & Trott's motion for summary judgment as alternative grounds for dismissal of this claim. *See* discussion in § III, *infra*.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## 2. RESPA claim

Plaintiff has alleged a violation of RESPA based upon Chase's "incomplete" response to his "qualified written request" (referred to in some decisions as "QWR") of December 23, 2009, which he submitted pursuant to 12 U.S.C. § 2605(e). Section 2605(e) provides in pertinent part as follows:

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

    (A) In general

    If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

    (B) Qualified written request

    For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A)    make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B)    after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605.

An individual plaintiff is entitled to damages and costs for a violation of § 2605(e) pursuant to 12 U.S.C. § 2605(f)(1), which provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts":

> In the case of any action by an individual, an amount equal to the sum of --
>
> > (A) any actual damages to the borrower as a result of the failure; and
> >
> > (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f)(1).

The pleadings and other evidence submitted to the court establish that Chase did not violate § 2605(e). Here, plaintiff submitted a 20-page letter to Chase. It appears to the court that this letter went far beyond the "request" contemplated by § 2605(e)(1)(B) (i.e., a letter which (i) "includes, or otherwise enables the servicer to identify, the name and account of the borrower," and which (ii) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower").

Plaintiff's letter identified his name and account as required by § 2605(e)(1)(B)(i). *See* Letter (docket no. 1-2 at p. 17). The balance of plaintiff's 20-page letter set out numerous allegations, questions, demands and requests. For example, plaintiff's first "request" is as follows:

> I demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding account #1989296303. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

Docket no. 1-2 at p. 17. Plaintiff's letter set forth approximately 190 questions, demands and requests for documents as follows:

1.     Unspecified documents "to conduct the examination and audit of this loan" which can be used to answer 10 broad categories of his "audit" (e.g., documents to ensure that this loan "[w]as originate in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws"). *Id.* at pp. 18-19.

2.     "[F]ront and back" copies of documents in response to 13 requests related to the closing of the mortgage loan and activity which occurred after the closing. *Id.* at pp. 19-20.

3.     Information and documents in response to 27 requests related to the "Mortgage/Deed of Trust" and activity occurring from the inception of his account to the present date. *Id.* at pp. 20-22.

4.     Information in response to three requests related to "Account Accounting and Servicing Systems." *Id.* at pp. 22-23.

5.     Information in response to four requests related to "debits and credits" in his account. *Id.* at p. 23.

6.     Information in response to five requests related to the "mortgage and assignments." *Id.*

7.     Information in response to 18 requests related to "attorney fees." *Id.* at pp. 24-25.

8.     Information in response to three requests related to "suspense/unapplied accounts." *Id.* at p. 25.

9.      Information in response to 20 requests related to "late fees." *Id.* at pp. 25-27.

10.     Information in response to 31 requests related to "property inspection." *Id.* at pp. 27-29.

11.     Information in response to 14 requests related to "Broker Price Opinion" fees. *Id.* at pp. 29-30.

12.     Information in response to 18 requests related to "Force-Placed Insurance." *Id.* at pp. 30-31.

13.     Information in response to 24 requests "In regard to Servicing." *Id.* at pp. 31-33.

On December 29, 2009, Chase advised plaintiff of the receipt of his qualified written request. *See* Letter (docket no. 22-3). Then, on March 19, 2010, Chase provided plaintiff with a response which included the following documents as attachments: note; security instrument; HUD-1 settlement statement; Truth-in-Lending statement; loan application; appraisal; applicable disclosures; loan transaction history; payoff statement; and escrow statements. *See* Letter (docket no. 22-4). Chase also confirmed that plaintiff had a valid obligation to Chase, and provided a response to the various categories of information requested by plaintiff. *Id.*

The court agrees with Chase that it complied with the requirements of § 2605(e). The servicer's duty after receiving a qualified written request under § 2605(e) has been summarized as follows:

> The servicer must then do one of three things within sixty days of receiving the letter: (1) correct the borrower's account and inform the borrower of those corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes the borrower's account is correct; or (3) investigate and provide a written explanation to the borrower of the reasons that the servicer cannot obtain the information that the borrower is requesting.

16

*Ploog v. HomeSide Lending, Inc.*, 209 F.Supp.2d 863, 868 (N.D.Ill. 2002).

In his complaint, plaintiff alleged that Chase violated RESPA because the response was "incomplete." Compl. at ¶ 11. As an initial matter, plaintiff's complaint should be dismissed for failure to state a claim for relief. Plaintiff's conclusory allegation, which does not explain how Chase's response violated its duty to respond under § 2605(e), is insufficient to state a cause of action under RESPA. *See, e.g., Thomas v. Trott & Trott PC*, No. 10-13775, 2011 WL 576666 at *8 (E.D. Mich. Feb. 9, 2011) (plaintiffs failed to allege a violation of § 2605(e) where they merely alleged that the loan servicer failed to "forward the requested information in Plaintiffs' QWR letter as mandated by the Act, and has failed to answer Plaintiffs' questions and concerns"); *Mekani v. Homecomings Financial, LLC*, -- F. Supp. 2d --, 2010 WL 2681077 at *8 (E.D. Mich. July 6, 2010) (complaint was inadequate to state a claim under § 2605(e), where the plaintiff alleged that the servicer did not respond in a "proper" manner, but failed to allege any factual content to plausibly suggest that the response was somehow inadequate).

In addition, the record reflects that there was no violation of RESPA. The record reflects that Chase investigated plaintiff's account and provided plaintiff with either the requested information or an explanation for why the information was unavailable as required by § 2605(e)(2)(C). Furthermore, plaintiff has neither alleged nor demonstrated any actual damages as required to maintain a cause of action for a violation of RESPA as allowed under § 2605(f). *See Eronini v. JP Morgan Chase Bank NA*, 368 Fed. Appx. 841, 842 (9th Cir. 2010) (holding that the district court properly dismissed the plaintiff's complaint for failure to state a claim for a violation of RESPA because the plaintiff suffered no damages as required under § 2605(f), which allows the recovery of "actual damages"); *Mekani*, -- F. Supp. 2d --, 2010 WL 2681077 at *9 ("[e]ven if the

Court were able to conclude that Plaintiff has adequately alleged that Defendant's responses were somehow inadequate, Plaintiff's RESPA claim fails for the additional reason that Plaintiff has alleged no actual damages attributable to Defendant's alleged failure to respond).

Accordingly, Chase is entitled to summary judgment on plaintiff's RESPA claim.

### III.    Ford and Trott & Trott's dispositive motions

Ford and Trott & Trott have moved to dismiss alternatively under Fed. R. Civ. P. 12(b)(6) and for summary judgment under Fed. R. Civ. P. 56.  Because these defendants have submitted documents which are in addition to the pleadings, the court will review their motion as one seeking summary judgment.  Although the court determined that plaintiff's claim related to the M.C.L. § 750.248 should be dismissed as to all defendants pursuant to Fed. R. Civ. P. 12(c), the court will, in the alternative, address this claim as it applies to Ford and Trott & Trott.

### A.    FDCPA

Assuming that Trott & Trott's activity meets the definition of a debt collector under the FDCPA, plaintiff has no basis for a claim under that act.  The only potential FDCPA claim suggested by the complaint is that Trott & Trott failed to validate the debt in violation of 15 U.S.C. § 1692g.  Compl. at ¶¶ 13-14 and p. 5 (seeking damages "for not answering my debt validation letter").  Plaintiff alleged that he received a "Notice of Foreclosure Sale" from Trott & Trott on May 24, 2010.  Compl. at ¶ 13.  Plaintiff responded to this Notice in a letter dated May 26, 2010, in which he disputed the debt of the mortgage loan and demanded that Trott & Trott "cease and desist" collection efforts.  *See* Letter (docket no. 1-2 at p. 40).  This activity, however, does not establish a violation of the FDCPA.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The validation of debt provisions provide that:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The procedure available to a consumer to dispute a debt is set forth in § 1692g(b), which provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original

creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692(b).

The record reflects that on February 8, 2010, Trott & Trott sent plaintiff a letter outlining the debt plaintiff owed on the mortgage loan. *See* Letter (docket no. 23-6). This letter identifies the law firm of Trott & Trott as "A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT," advises plaintiff to address written requests to the "FAIR DEBT COLLECTION CLERK" in the firm's foreclosure department, and includes a "NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. SECTION 1692g AS AMENDED" advising plaintiff of his right to dispute the debt under the FDCPA). *Id.* In the letter, Trott & Trott states that it represented Chase, identified as "the creditor to which your mortgage is owed or the servicer for the creditor to which the debt is owed," that "[u]nder the terms of your mortgage, the creditor has elected to accelerate the total indebtedness," and that "[t]his matter was referred to [Trott & Trott] to foreclose the mortgage." *Id.* The letter identified plaintiff's total indebtedness as $51,615.26 consisting of the following: Principal Balance $47,573.71; Unpaid Interest $2,776.22; Late Charges $242.41; Escrow Advance $993.59; Insurance Advances $19.33; and Other Advances $10.00. *Id.* The letter advised plaintiff that if he notified Trott & Trott's office, in writing, within 30 days of the receipt of the notice, "that the debt, or any portion thereof is disputed, we will obtain

a verification of the debt and a copy of the verification will be mailed to you." *Id.* Plaintiff does not allege that he notified Trott & Trott of his dispute with the debt within 30 days after receiving this initial communication sent to him in connection with the collection of the debt. Rather, plaintiff alleged that he disputed the debt after receiving a subsequent "Notice of Foreclosure" on May 24, 2010. *See* Compl. at ¶ 13. Plaintiff has failed to demonstrate that he sent a timely notice to validate the debt as required under § 1692g(b). Accordingly, defendants are entitled to summary judgment with respect to this FDCPA claim.[3]

---

[3] In at least one other action in this court, Trott & Trott has asserted that it is not a debt collector under the meaning of the FDCPA when it is pursuing non-judicial foreclosure proceedings. *See Golliday v. Chase Home Finance, LLC,* -- F.Supp.2d --, 2001 WL 31038 at *4 (W.D. Mich. Jan. 5, 2011). In *Golliday,* the court reviewed the applicable authorities and concluded that the plaintiffs had failed to demonstrate that Trott & Trott was a debt collector "for all purposes" under the FDCPA. *Id.* at *5. Nevertheless, assuming that Trott & Trott was a debt collector, the court considered whether the firm had violated § 1692g. *Id.* at *6. In this case, Trott & Trott's brief addressed the merits of plaintiff's § 1692g claim, apparently under the assumption that it was a debt collector for purposes of § 1692g. Unlike *Golliday,* Trott & Trott did not include any argument disputing its status as a "debt collector" under the FDCPA. Rather, Trott & Trott reserved the right "to discuss whether the enforcer of a security interest is a debt collector under the FDCPA." Trott & Trott Brief at p. 11. While it is unnecessary to resolve Trott & Trott's "reserved" issue (due to the failure of plaintiff' § 1692g claim), the court notes that a this a case in which Trott & Trott might well be considered a debt collector for at least some limited purposes. For that reason, the court will briefly address its status as a debt collector. As a general rule, this court has determined that a law firm representing a client in a non-judicial foreclosure is not pursuing debt collection activities under the FDCPA. *See Golliday,* 2001 WL 31038 at *6; *Gathing v. MERS, Inc.,* No. 1:09-cv-7, 2010 WL 889945 at *13-14 (W.D. Mich. March 10, 2010) ("a person enforcing a security interest through nonjudicial action cannot be subject to liability under FDCPA unless that person violates [ 15 U.S.C.] § 1692f(6)"). An exception to this rule appears in § 1692f(6), which prohibits certain "unfair practices" such as "Taking or threatening to take any action to effect dispossession or disablement of property if -- (A) there is no present right to possession of the property claim as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." In defining the term "debt collector," 15 U.S.C. § 1692a(6) provides that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *See Montgomery v. Huntington Bank,* 346 F.3d 693, 700-01 (6th Cir. 2003) (noting that "except for purposes of § 1692f(6), an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the FDCPA"). In this instance, it would appear that Trott & Trott would be a "debt collector" for purposes of a claim brought under § 1692f(6)(A). When Trott & Trott generated the February 8, 2010 letter, its client (Chase) had "no present right to possession of the property claimed as collateral," because MERS did not assign the mortgage to Chase until the next day. *See* Assignment (February 9, 2010) (docket no. 1-2 at p. 37); § 1692f(6)(A). However, whether Trott & Trott violated § 1692f(6)(A) is an academic

### B.       Fraud claim

Ford and Trott & Trott have broadly construed plaintiff's complaint to include claims of fraud. As previously discussed, the court did not find such a claim within plaintiff's complaint. Nevertheless, even if the court had found that plaintiff alleged a claim sounding in fraud, plaintiff has failed to state a cause of action. It is undisputed that Ford and Trott & Trott were authorized to act on behalf of MERS and to execute documents relating to mortgage foreclosures. *See* Agreement for Signing Authority (between MERS, Chase and Trott & Trott) (docket no. 23-4); MERS Corporate Resolution (appointing Trott & Trott employees as "assistant secretaries and vice presidents" with authority to execute documents) (docket no. 23-5); and Affidavit of Marcy Ford at ¶ 3 ("On February 9, 2010, I executed the Assignment of Mortgage . . . as Vice President for Mortgage Electronic Registration Systems, Inc., pursuant to the Agreement for Signing Authority dated September 27, 2007") (docket no. 23-11). There is no evidence that Ford or Trott & Trott engaged in any wrongful conduct with respect to the assignment of the Mortgage. Accordingly, in the alternative to dismissal under Fed. R. Civ. P. 12(c), defendants are entitled to summary judgment with respect to any fraud claim arising from the assignment of plaintiff's mortgage.

### IV.       Challenge to state foreclosure proceedings

Finally, plaintiff's complaint contests the state foreclosure procedure as having "many violations," including an alleged inadequate posting of the foreclosure notice. Compl. at ¶ 15. In his response to Chase's motions, plaintiff asserts that the foreclosure was not proper because the party foreclosing the mortgage was not the owner or holder of an interest in the indebtedness, and the party foreclosing the mortgage by advertisement did not have a record chain of title under

---

question, because plaintiff did not allege a cause of action on this ground.

M.C.L. § 600.3204 *et seq*. (providing for foreclosure of mortgage by advertisement). Plaintiff has

alleged a claim with respect to whether the foreclosure procedure was adequate under state law. *See*

*First Family Mortgage Corporation of Florida v. Earnest*, 851 F.2d 843, 846 (6th Cir. 1988)

("mortgage foreclosure and defenses to foreclosure traditionally are matters of state law").

Defendants have not responded to this claim. It is not for this court to perform a *sua sponte* review

of the available evidence to determine whether defendants followed Michigan state law with respect

to the foreclosure. Accordingly, this claim survives defendants' dispositive motions.

Title 28 U.S.C. § 1367 provides that "the district court shall have supplemental

jurisdiction over all other claims that are so related to the claims in the action within such original

jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). When this

case was removed to federal court, this court exercised its supplemental jurisdiction over plaintiff's

state law claim, because that claim appeared to be intimately related to the alleged violations of

federal statutes. Because plaintiff does not have viable federal claims against defendants, the court

should re-examine whether to exercise supplemental jurisdiction over plaintiff's state law claims

asserted against them. Under § 1367(c)(3), a district court may decline to exercise supplemental

jurisdiction over a claim if the court "has dismissed all claims over which it has original

jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine

whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella*

*v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). "[W]hen all federal claims

have been dismissed before trial, the best course is to remand the state law claims to the state court

from which the case was removed." *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir.

2004). *See* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district

court lacks subject matter jurisdiction, the case shall be remanded"); *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 576-77, 583 (6th Cir. 2007) (when a state court case containing claims under both federal and state law is removed to federal court, and the plaintiff's federal claims are subsequently dismissed, the federal court should remand, rather than dismiss, the remaining state law claims). The court finds no reason to retain supplemental jurisdiction over plaintiff's state law claim that the foreclosure did not comply with Michigan law. Accordingly, this remaining state law claim should be remanded to the Berrien County Circuit Court.

## IV.    Recommendation

For these reasons, I respectfully recommend that Chase's motion for judgment on the pleadings and summary judgment (docket no. 22) and Ford and Trott & Trott's motion to dismiss and for summary judgment (docket no. 23) be **GRANTED** as to all claims except for plaintiff's claim that the foreclosure did not comply with Michigan law.

I further recommend that plaintiff's remaining state law claim be remanded to the Berrien County Circuit Court.


Dated:  March 11, 2011                        /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).